IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Zheni Naumova, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 9:22-cv-4632-BHH-PJG |
| v. ) | |
| ) | **Opinion and Order** |
| Sharonview Federal Credit Union, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

*Pro se* Plaintiff Zheni Naumova ("Plaintiff") filed this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, against her former employer, Defendant Sharonview Federal Credit Union ("Sharonview"). (ECF No. 1.) Pursuant to the provisions of Title 28, United States Code § 636(b)(1)(B), and the Local Rules, D.S.C., this matter was referred to a United States Magistrate Judge for consideration.

Now before the Court is Sharonview's motion for summary judgment. (ECF No. 72.) Plaintiff filed a response in opposition (ECF No. 108), and Sharonview filed a reply. (ECF No. 110.)

On July 30, 2024, United States Magistrate Judge Paige Gossett issued a Report and Recommendation ("Report"), recommending that Sharonview's motion for summary judgment be granted. (ECF No. 136.)

Plaintiff filed objections to the Report (ECF No. 142), and Sharonview filed a reply to Plaintiff's objections. (ECF No. 143.)

**Standard of Review**

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**Discussion**

I.  **Plaintiff's Objections**

   A. **"Failed to construe all facts and reasonable inferences in the light most favorable to Plaintiff"**

Plaintiff's first objection to the Report is that the Report's background section and section discussing Plaintiff's discriminatory discharge and failure to promote claims fails to construe the facts in the light most favorable to her. (ECF No. 142 at Section A.1 & 2.) Based on the few, specific examples Plaintiff provides (*see id.* at 2-3), it is evident Plaintiff disagrees with some of the factual statements recited in the Report regarding her performance and Sharonview's expectations of the same. Based solely on her

2

disagreement with these statements, Plaintiff asserts that the Magistrate Judge incorrectly relied on and/or misconstrued these facts. The Court finds no merit to this objection. The complained-of facts originate from Plaintiff's performance review documentation maintained by Sharonview (*see, e.g.,* ECF No. 72-6, 72-7); thus, these facts were properly considered and accurately summarized by the Magistrate Judge in her Report. Such facts are not "biased," as Plaintiff claims, nor is there any evidence that they were misconstrued by the Magistrate Judge.

Along the same vein, Plaintiff claims that the Magistrate Judge ignored **her** facts and evidence. (ECF No. 142 at 3, 17.) Specifically, Plaintiff objects to the Report's (1) failure to mention that Plaintiff received praise regarding her performance; (2) failure to include Plaintiff's own affidavit testimony; and (3) failure to cite to the affidavit testimony of Plaintiff's former colleague, Fanny Enamorado – specifically Ms. Enamorado's testimony that Plaintiff "competently and efficiently executed her job duties and responsibilities" and "closed the branch [with her and Eric Godwin] and left the workplace at 5:30 p.m." on February 16, 2022. (*Id.* at 3-4.) However, it is well established that neither the opinion evidence of Plaintiff's co-worker concerning Plaintiff's performance nor Plaintiff's own self-assessment creates a genuine dispute of material fact as to whether Plaintiff was meeting Sharonview's legitimate expectations. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (finding that "[t]he alleged opinions of [plaintiff]'s co-workers as to the quality of her work are similarly 'close to irrelevant'" in a wrongful discharge action; "'[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff'" (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299

3

(4th Cir. 1998))); *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). Further, as to Plaintiff's conduct on February 16, 2022, the Report states:

> After receiving Larkerbrink's email on February 16, 2022, Naumova left the bank in such a manner that it prompted other employees to seek extra security for the branch and believe that Naumova had quit. **Naumova disputes that she behaved in a way that would justify increased security or a belief that she quit her job**.

(ECF No. 136 at 6.) Thus, while the Magistrate Judge did not cite to Ms. Enamorado's or Plaintiff's affidavit, the Report acknowledged Plaintiff's disagreement with Sharonview's characterization of the events that transpired on this day.[1] Accordingly, the Court finds no merit to this objection.

### B. "Erred in finding Plaintiff's claim of phone call data manipulation is speculative"

Plaintiff objects to the following finding of the Magistrate Judge:

> Naumova also argues that the phone call data was fabricated or manipulated because Spratlen was accused of data manipulation in a previous job, for which Spratlen filed a federal employment discrimination lawsuit. (Pl.'s Resp., ECF No. 108 at 14.) Even assuming such allegations are admissible evidence here, Naumova fails to provide any evidence that Spratlen had any role in documenting Naumova's phone call data. To the contrary, the record shows that Davis produced that data. Thus, Naumova's assertion that the phone call data was fabricated or manipulated is speculative. *See Lashley v. Spartanburg Methodist Coll*., 66 F.4th 168, 176 (4th Cir. 2023) (stating that "mere conjecture" about an employer's justifications for terminating the plaintiff is insufficient to show that the real reason for termination was discriminatory animus); *Collier v. Charlottesville Sch. Bd*., 218 F. App'x 244, 245 (4th Cir. 2007) (stating that the plaintiff's own, unsubstantiated assertions are not sufficient to create a genuine issue of material fact as to pretext).

---

[1] Plaintiff also appears to object to the Magistrate Judge's prior rulings with regard to video surveillance footage from this day. (ECF No. 142 at Sections C & F.) However, such prior rulings by the Magistrate Judge are not currently before this Court for review. Thus, the Court declines to address such purported objections to the Report.

(*Id.* at 13.) Significantly, however, the Magistrate Judge did not end her discussion of this issue here. Rather, the Magistrate Judge took her analysis one step further and found that, even if the court assumed *arguendo* that Plaintiff's phone call data manipulation claim was *not* speculative, her claims still fail as a matter of law.  As explained in the Report:

> . . . even if Naumova could demonstrate factual inaccuracies in Davis's assessment of Naumova's performance as a Member Experience Coordinator, Naumova puts forth no evidence showing that Davis did not *genuinely* believe that Naumova was not performing up to Sharonview's expectations. *See Adkins v. CSX Transportation, Inc.*, 70 F.4th 785, 794 (4th Cir. 2023) ("Moreover, when an employer gives a legitimate, nondiscriminatory reason for terminating an employee, it is not our province to decide whether the reason was wise, fair, or even correct, so long as it was the genuine reason for the employment decision.") (internal quotation marks and alterations omitted); *see also King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.") (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)); *Addison v. CMH Homes, Inc.*, 47 F. Supp. 3d 404, 420 (D.S.C. 2014) ("An employer's expectations of its employees are considered 'legitimate' when they are honestly held; whether the employee agrees with those expectations is not the test. . . . As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers."). And crucially, Naumova puts forth no evidence permitting an inference that Davis or Spratlen were motivated by animus toward Naumova's national origin or age. *See Hill*, 354 F.3d at 284-85.

(*Id.* at 13-14 (emphasis in original).) Thus, the Court finds no merit to this objection.

### C. "Erred in finding that Plaintiff presents no direct proof of discrimination"

Plaintiff next objects to the Magistrate Judge's discussion of the law regarding the two proof schemes available to a plaintiff in an employment discrimination case and, specifically, the Magistrate Judge's finding that Plaintiff's "claims must be analyzed under the McDonnel Douglas burden-shifting framework" because Plaintiff "presents no direct

5

proof of discrimination." (*Id.* at 10.) Plaintiff asserts that this finding is erroneous because, according to Plaintiff, Manager Davis's repeated statements as to "culture" constitutes direct evidence of discriminatory intent. (ECF No. 142 at Section B.) Plaintiff claims that Manager Davis made the following comments "about [her] culture":

> . . . on June 17, 2021, Manager Davis reported as follows: "Discussed with Zheni that progression is not just a document, it is also a culture fit["] (*Emphasis Added*). Then, on August 3, 2021, Manager Davis reported as follows: "we don't hire based on experience, we hire on the basis of being a culture fit for Sharonview" (*Emphasis Added*). ECF 60-6 ("EXHIBIT H").

(*Id.* at 12.) Plaintiff contends that the Magistrate Judge "failed to consider the seriousness and gravity of manager Davis's comments" to her, and the fact that these comments "played a decisive role in the repeated refusal to sign off [on] Plaintiff's progressions [leading to her termination]." (*Id.* at 13 (second alteration in original).)

"Direct proof of discrimination must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Linda v. Hardee's Food Sys., Inc.*, No. CV 6:04-22810-RBH, 2006 WL 8444869, at *3 (D.S.C. Mar. 24, 2006) (quoting *Blankenship v. Warren Cnty. Sheriff's Dep't*, 939 F.Supp. 451, 456 (W.D. Va. 1996)). The following are examples of comments courts have found constitute direct evidence: "need[] to lighten up the store" *Linda*, 2016 WL 8444869 at *2-3; "those niggers out there will not get anywhere with this company" *E.E.O.C. v. Beverage Canners, Inc.,* 897 F.2d 1067 (11th Cir. 1990); and "if it was his company, he wouldn't hire any black people." *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920 (11th Cir. 1990).

The Court first notes that the record does not reveal that Manager Davis made any comments "about **Ms. Naumova's** culture." (ECF No. 142 at 12) (emphasis added.)

6

Indeed, the record is devoid of any comments by Manager Davis having anything to do with Bulgarian culture.[2] Rather, as noted by the Magistrate Judge, the comments made by Manager Davis to Plaintiff were regarding Plaintiff's fit into **Sharonview's** culture, specifically the traits valued by Sharonview as embodied in the company's "humble, hungry, and smart" mantra that it used to encourage team-oriented behavior. (ECF No. 136 at 14-15. *See* ECF No. 72-1 at 5 n.3.) Thus, the Court rejects Plaintiff's objection based on Plaintiff's contention that Manager Davis made comments about her culture.

Additionally, the Court is not persuaded by Plaintiff's attempt to distinguish the cases[3] cited by the Magistrate Judge in support of the finding that the above comments, without more, are "insufficient to demonstrate discriminatory intent by an employer." (ECF No. 136 at 14.) And, after close review, the Court is equally not persuaded that the cases Plaintiff cites in her objections support a contrary finding by this Court. (*See* ECF No. 142 at 16-17.)

### D. "Failed to properly consider Plaintiff's failure to promote and ADEA claims"

Here, Plaintiff's objection is that the Magistrate Judge failed to consider Plaintiff's assertion that Araya Lopez, a Sharonview employee who worked in a different branch during Plaintiff's employment, was able to progress into the Member Experience Representative ("MER") position prior to completing the progression process for the Member Experience Coordinator ("MEC") position. (*Id.* at 20-21.) Plaintiff testified that Ms.

---

[2] Plaintiff testified that she is a citizen of Bulgaria and the United States. (ECF No 108-1 at 28).
[3] The Report cited to the following cases: *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 177 (4th Cir. 2023) ("Though there may be circumstances where evidence reveals that 'good fit' is a subterfuge for discrimination or retaliation, it is also a perfectly innocuous comment that an organization's collaborative goals would not be furthered, and in fact might be retarded, by a particular employee."); *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 115 (1st Cir. 2015) (stating that opining on the employee's "fit into the culture of the firm" did not show animus where the evidence showed the phrase was regularly used to discuss the employee's ability to solicit business and work collegially with other staff).

Lopez was younger than her, though she also testified that she did not know Ms. Lopez's age or national origin, nor was she replaced by Ms. Lopez. (ECF No. 72-2 at 224:25-225:5.) After review, the Court finds that the Magistrate Judge properly considered and relied on the pertinent record evidence in analyzing these claims versus Plaintiff's speculation and conjecture regarding Ms. Lopez's employment. Accordingly, the Court finds this objection without merit.

Plaintiff next objects that the Magistrate Judge "failed to consider the fact that Sharonview's 'legitimate reasons' for terminating [her] . . . are unworthy of credence because Manager Davis's basis for evaluating Plaintiff's performance on the number of calls she made was based on [an] outdated directive." (ECF No. 142 at 22.) The Court finds that this argument is a red herring. Plaintiff's performance review documentation indisputably evidences Sharonview's expectation that Plaintiff meet a certain number and type of phone calls daily. Thus, even assuming the call requirement was initially based on a directive that had become outdated, Sharonview had clearly communicated to Plaintiff that her performance is being evaluated, in part, on her meeting a call requirement; that she was not meeting Sharonview's expectations in this area; and that her performance needed to improve or further disciplinary action, including termination, may be taken against her. Thus, the Court finds this objection without merit.

### E. "Erred in finding that Plaintiff cannot point to direct evidence of retaliation"

Based on the heading of this objection, it appears Plaintiff's objection is to this statement in the Report:

> Here, Naumova does not point to any direct evidence of retaliation. Instead, she argues that she can establish a causal connection between her

8

complaints of discrimination and her termination based on the temporal proximity between the two events. (Pl.'s Resp., ECF No. 108 at 20.)

(ECF No. 136 at 15-16.) However, the alleged error complained of under this heading is the Report's statement that "Naumova's first complaint of discrimination came in response to Davis's *final* warning letter on January 20, 2022.'" (ECF No. 142 at 24 (quoting ECF No. 136 at 16 (emphasis in original)).) Plaintiff states that the first time she complained of discrimination to Sharonview's human resources was in July of 2021. (*Id.*)

Indeed, as stated in the Report's background section:

In July [of 2021], Naumova complained to Human Resources that she was discriminated against and subject to a double standard because she did not receive the promotion to a Member Experience Representative." The record does not reflect what Naumova told Human Resources about the basis of the discrimination—that is, whether she believed she was discriminated against based on her national origin, age, or other federally protected class.

….

(ECF No. 136 at 3.) Further, the Report notes that, during the September 2021 check-in, Davis "referenced Naumova's complaint to Human Resources about discrimination . . . ." (*Id.* at 4.) Thus, the Court understands the basis for Plaintiff's objection here, as the Report's statement above, **as written**, seemingly ignores the undisputed fact that Plaintiff complained of being "discriminated against" to Miller in July 2021. However, for the following reasons, the Court finds that this statement in the Report is not fatal to the Magistrate Judge's subsequent analysis and ultimate recommendation that the Court grant Sharonview's motion as to Plaintiff's retaliation claim. Thus, the Court finds this objection without merit.

Protected activity is conduct by an employee which resists or confronts "an employment practice made unlawful" by a federal discrimination statute. *See, e.g., Sutton*

9

*v. Vilsack*, No. 2:12-cv-01386-DCN, 2014 WL 4199163, at *8, n.10 (D.S.C. Aug. 20, 2014). While the Fourth Circuit has "articulated an expansive view of what constitutes oppositional conduct" for purposes of retaliation, federal employment laws do not prohibit private employers from retaliating against an employee based on opposition to discriminatory practices that are outside the scope of the ADEA or Title VII. *Stennis v. Bowie State Univ.*, 716 F. App'x 164, 167 (4th Cir. 2017). In other words, "[c]omplaints are not considered protected activities when they fail to make any allegations about discrimination based on a protected characteristic." *McGruder v. Epilepsy Found. of Am., Inc.*, No. 11-CV-02310-AW, 2012 WL 832800, at *4 (D. Md. Mar. 9, 2012). Thus, Plaintiff must allege that she opposed discrimination based on a protected characteristic in order to show actionable protected activity. *Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548, 561 (D.S.C. 2013); *see also Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 978 (8th Cir. 2012) ("For a report of discrimination to be statutorily protected activity under Title VII, it must include a complaint of [race or] national-origin discrimination or sufficient facts to raise that inference.")

Here, the record reflects that Plaintiff made a verbal complaint of "discrimination and double standard via phone call to Ty Miller" in human resources in July of 2021. (ECF No. 108 at 4. *See also* 108-1 at 39.) Then, during the September 2021 check-in with Plaintiff, Davis discussed Plaintiff's concerns made to Miller surrounding Sharonview's decision not to promote her to the MER position:

> . . . . [I] informed her that her actions and words are not aligning based on her reaching out to Ty about feeling like hiring for a MER versus promoting her from a MEC to a MER is a double standard. Actions and words are inconsistent and not sustainable. Discussed again that competencies are not simply technical, but are also behavioral and interaction-based. Continuing to have same discussion. Continuing to meet conversations with

10

> resistance and using words, "discriminated against," "punished," "demanding," and now "double standard." Expressed severity of words and that we don't take those lightly. "Discriminated against" used in check-in from July when Zheni expressed she felt qualified for the MER position, but was in a MEC role.

(ECF No. 108-1 at 170.) Upon close review, there is no indication in the record that Plaintiff made any reference to or mention of national origin or age (or any other protected characteristic) when she complained to Miller. (*Id. See also id.* at 21, 39.) Further, Plaintiff does not allege, nor does she argue in her briefs, that she made any reference to discriminatory treatment based on national origin or age when she complained to Miller. (*See* ECF No. 1; ECF No. 108 at 19-20.)

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's July 2021 complaint was not sufficient to have placed Sharonview on notice that Plaintiff's complaint was based on national original and/or age discrimination. Accordingly, the Court holds that Plaintiff's complaint to Miller of being "discriminated against and subject to a double standard" is not protected activity under Title VII or the ADEA and cannot form the basis of Plaintiff's retaliation claim.  *See Hemphill*, 975 F. Supp. 2d at 548 (finding plaintiff's email to human resource manager that "she was 'being treated unfairly,' had been 'spoken to in a very unprofessional, disrespectful, and degrading manner'" was not protected activity because such allegations did not make any reference to discriminatory treatment based on race or sex); *Rose v. Sumter Cnty. Sch. Dist.*, No. 3:20-CV-1008-MGL-TER, 2021 WL 8014695, at *6 (D.S.C. Dec. 22, 2021) (finding plaintiff communications with the district that the hostile work environment exacerbated his medical condition was not protected activity because there was "no mention in these communications that Plaintiff believed he was being subjected to the

11

hostile treatment because of a disability"), *R&R adopted*, No. CV 3:20-01008-MGL, 2022 WL 601858 (D.S.C. Mar. 1, 2022); *Gray v. Walmart Stores, Inc.*, 7:10–CV–171–BR, 2011 WL 1831780, at *7 (E.D.N.C. May 12, 2011) (finding that a plaintiff's internal complaints did not constitute protected activity because the complaints made "no mention whatsoever of racial discrimination" and "no reasonable person could objectively believe that plaintiff's internal complaints were meant to oppose practices made unlawful by Title VII"); *Wehunt v. R.W. Page Corp.*, 352 F. Supp. 2d 1342, 1358 (M.D. Ga. 2004) ("It is not enough to simply complain in a racially neutral way about an employer's practices, and then expect the employer to speculate as to whether such complaints may be motivated by an employee's subjective and undisclosed belief that the employer was engaged in race discrimination.").

Because the Court finds that Plaintiff failed to present sufficient evidence to create a genuine issue of material fact regarding whether she engaged in protected activity in July 2021, it finds that Plaintiff's first complaint of discrimination **opposing practices made unlawful under Title VII and the ADEA** was made in response to Davis's final warning letter on January 20, 2022. As such, the Court further finds that the Magistrate Judge properly considered whether Plaintiff presented evidence to create a genuine issue of material fact on the issue of causation between her protected activity in 2022 and her termination.

Nevertheless, even assuming *arguendo* that Plaintiff's July 2021 complaint constitutes protected activity or that the temporal proximity between Plaintiff's 2022 complaint and termination is sufficient to create a genuine issue of material fact regarding a causal connection, the Court also finds that Plaintiff has not presented evidence

sufficient to create a genuine issue of material fact that her employment would not have been terminated but for Sharonview's desire to retaliate. *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (holding that a plaintiff must show that "*the desire to retaliate* was the but-for cause of the challenged employment action") (emphasis in original) (citation and internal quotation marks omitted). Rather, as shown herein and in the Magistrate Judge's Report, the Court finds that Plaintiff has failed to advance any arguments or point to any evidence in the record that supports even the inference that Sharonview's reasons for issuing her a verbal and written warning or for terminating her employment are unworthy of credence. Thus, for these additional reasons, the Court finds that Sharonview is entitled to summary judgment on Plaintiff's retaliation claim.

## Conclusion

For the foregoing reasons, the Court **adopts and specifically incorporates** the Magistrate Judge's Report (ECF No. 136); **overrules** Plaintiff's objections (ECF No. 142); and **grants** Sharonview's motion for summary judgment. (ECF No. 72.)

**IT IS SO ORDERED.**

/s/ *Bruce Howe Hendricks*
United States District Judge

September 26, 2024
Charleston, South Carolina